UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARTFORD ENGINEERING, LLC,

Plaintiff,

v.

MW INDUSTRIES, INC.,

Defendant.

Case No. C09-869-MJP

ORDER ON MOTION TO DISMISS

This matter comes before the Court on Defendant MW Industries, Inc.'s ("MW") Motion to Dismiss all claims against it for lack of personal jurisdiction and improper venue. In the alternative, MW seeks transfer of this action to North Dakota. Having reviewed the Motion, Plaintiff Hartford Engineering, LLC's ("Hartford") response, MW's reply, and all papers submitted in support thereof, the Court DENIES the Motion. The Court finds this matter suitable for disposition without oral argument.

**Background**

Hartford filed suit in this Court against MW, asserting claims that MW breached written and oral contracts related to engineering services that Hartford provided to MW. (Dkt. No. 1) Hartford is a limited liability corporation formed under Washington law that provides mechanical engineering services and has its principal and only place of business in Bellevue, Washington. (Dkt. No. 1 ¶ 1; Dkt. No. 11 at 1-2) MW is a North Dakota corporation that manufactures large oil field equipment, with its principal place of business in

ORDER ON MOTION TO DISMISS- 1

North Dakota. (Dkt. No. 6 at 2) On November 22, 2007, two members from MW called Hartford to discuss obtaining Hartford's engineering services. (Dkt. No. 10 at 3) After this call, Dan Hartford, Hartford's principal, traveled to North Dakota to meet MW on December 6, 2007. (Id.) Formal negotiations did not begin until December 10, 2007, after Mr. Hartford returned to Washington. (Id.)

While operating in Washington, Hartford prepared a written Agreement to govern Hartford's work on the MW project, and created a Terms and Conditions sheet based on a standard industry form. (Id. at 3) The Agreement states that the scope of services was to "Assist Client with various design and analysis issues related to the Client's line of service rigs." (Dkt. No. 11 at 9) The "Location" for the project is listed as being in Kenmare, North Dakota, but the scope of the work was to "prepare 3D models and production drawings of new [oil well service rig] equipment [that Hartford] had prepared for MW." (Dkt. No. 11 at 3 & 11) According to Mr. Hartford, "[a]ll of this work was performed by Hartford employees in Washington." (Dkt. No. 11 at 3) Hartford emailed the Agreement and Terms to MW on December 17, 2007. (Dkt. No. 10 at 3-4) On January 3, 2008, two Hartford employees travelled to MW's office in North Dakota to gather data and obtain MW's signature to the Agreement. (Id. at 4)

Within one week of executing of this Agreement, MW contacted Hartford in Washington and made oral requests for Hartford to perform work outside the agreement. (Dkt. No. 11, Hartford Decl. ¶ 13) Hartford performed these requested tasks, though some were outside the scope of the Agreement. Hartford then drafted a new Agreement on February 8, 2008 to cover the enlarged scope of work. (Id. at ¶ 14) None of the Terms and Conditions changed. (Id.) MW signed the new Agreement on February 14, 2008, but for reasons unknown, Mr. Hartford did not sign the document. (Id.; Dkt. No. 11 at 15)

After signing the February, 2008 Agreement, MW made further telephonic requests to Hartford for additional design work. (Dkt. No. 11 ¶ 15) During these conversations MW was

| 1 | in North Dakota and Hartford was in Washington, though "on certain limited occasions" both
| 2 | parties were in North Dakota. (Id.)

According to Hartford, roughly 90 percent of the work it performed under these various agreements was carried out in Washington by 18 individuals. (Id. at ¶ 17) Out of over 17,000 billed hours for all of Hartford's work on MW projects, only 168 were performed outside of Washington in North Dakota. (Id.) Throughout the course of the relationship between MW and Hartford, two MW employees traveled to Washington to train at Hartford's office. (Hartford Decl., Dkt. No. 11 at ¶ 18) Hartford also opened an office in Bismarck, North Dakota with one employee in July 2008, in order to facilitate working with MW. (Id. at ¶ 20) Hartford shut down this office in July 2009 and laid off its sole employee in North Dakota. (Id.) MW paid Hartford by wiring funds to a bank in Bellevue, Washington or by mailing a check to Hartford in Bellevue, Washington. (Id. at ¶ 19)

In May 2009, MW ceased to pay for Hartford's services, for which it was invoiced. (Dkt. No. 1 ¶ 13). Hartford filed suit on June 23, 2009, claiming entitlement to over $660,000 in invoiced fees for services rendered. MW presently moves to dismiss Hartford's complaint for lack of personal jurisdiction and improper venue, and, alternatively, transfer of venue.

**Analysis**

A.  Motion to Dismiss Standards

While it is the plaintiff's burden to establish the Court has personal jurisdiction over the defendant, the plaintiff is only required to make a prima facie showing of jurisdictional facts to withstand a motion to dismiss. See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). The Court must take as true the plaintiff's allegations and resolve all factual disputes in the plaintiff's favor. Id. "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." Id.

1 On a motion to dismiss for improper venue, the allegations in the complaint need not be accepted as true and the Court may consider evidence outside the pleadings. <u>Richards v. Lloyd's of London</u>, 135 F.3d 1289, 1292 (9th Cir. 1998); <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1137 (9th Cir. 2004).

B. <u>Personal Jurisdiction</u>

MW contends that the Court cannot assert personal jurisdiction over it because the contacts it has with Washington are simply too attenuated to satisfy due process. Hartford concedes that the Court does not have general jurisdiction over MW, but asserts that the contractual relationship between the parties provides the basis for finding specific jurisdiction.

Where, as here, no federal law authorizes personal jurisdiction, the Court must first examine whether the forum state's laws permit the assertion of jurisdiction over non-resident defendants. <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1015 (9th Cir. 2008). Washington's long-arm statute permits the exercise of jurisdiction to the full extent of the due process clause of the U.S. Constitution. <u>Easter v. Am. West Fin.</u>, 381 F.3d 948, 960 (9th Cir. 2004) (citing RCW 4.28.185). A three-prong test governs the Court's analysis of whether specific jurisdiction exists. First, the plaintiff must demonstrate that the defendant "performed some act or consummated some transaction within the forum state or otherwise purposefully availed himself of the privileges of conducting activities in the forum." <u>Id.</u> (quotation omitted). Second, the plaintiff must demonstrate that his claim "arises out of or results from the defendant's forum-related activities." <u>Id.</u> (quotation omitted). Third, the exercise of jurisdiction must be "reasonable." <u>Id.</u> at 261. (quotation omitted). The plaintiff bears the burden of establishing the first two prongs, and if it does so successfully, the defendant must prove the third. <u>Menken v. Emm</u>, 503 F.3d 1050, 1057 (9th Cir. 2007).

All three prongs indicate that the Court has specific jurisdiction over MW.

1. Purposeful Availment

MW purposefully availed itself of the privilege of doing business in Washington. MW repeatedly solicited Hartford to perform various mechanical engineering services that were largely performed in Washington. MW specifically chose to avail itself of the services provided by Hartford, knowing it was located in Washington and that the engineering services would be performed in Washington. The activities at issue here are focused on the forum state. See Yahoo! v. La Ligue Contre Le Racisme and L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). Moreover, MW freely signed the Terms and Agreement form, which required it to submit to jurisdiction in Washington.[1] See Dow Chem. v. Calderon, 422 F.3d 827, 831 (9th Cir. 2005); see also Burger King v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985). The Court finds that MW purposefully availed itself of this forum.

2. Forum-Related Conduct

MW made repeated requests to Hartford in Washington for Hartford to perform engineering services within Washington. Hartford would not have suffered the alleged harm but-for this contact. Hartford has satisfied its burden as to this element.

3. Reasonableness

MW bears the burden to demonstrate that it would not be reasonable for the Court to exercise jurisdiction over it. Roth v. Garcia-Marquez, 942 F.2d 617, 623 (9th Cir. 1991). Seven factors govern this inquiry.

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

---

[1] That the Agreement does not explicitly state that Washington law applies is of no moment. Hartford is a Washington corporation and the Agreement states unambiguously that the law of the engineer—Hartford—applies to this dispute. (Dkt. No. 11 at 16).

Menken, 503 F.3d at 1058 (quotation omitted). These factors do not weigh in MW's favor.

First, MW purposefully interjected itself into the affairs of Washington by hiring a Washington engineering firm to perform work that it knew or should have known would occur substantially in Washington.

Second, MW suggests that it would be a burden on it to litigate in Washington based on the fact that more employees from Hartford traveled to North Dakota than MW employees traveled to Washington. The mere fact that MW has traveled less than Hartford is not sufficient to make this element weigh in MW's favor. See Menken, 503 F.3d at 1060 (noting that evidence of regular travel may be relevant, but that expense and convenience are the thrust of the inquiry).

Third, MW admits that there is no conflict of law, and this element does not favor MW.

Fourth, MW asserts that Washington has no interest in adjudicating a dispute over work that "took place (or failed to take place) primarily in North Dakota." (Dkt. No. 6 at 9). To make this conclusion, the Court would have to ignore the declaration submitted by Hartford that 90% of the work was performed in Washington. The Court will not do so.

Fifth, the factor of efficiency with regard to the witnesses and evidence weighs in favor of this forum. MW has done little to carry its burden on this point, whereas Hartford has alleged that most of the witnesses and much of the evidence is located in Washington. (Dkt. No. 10 at 12).

Sixth, the convenience and effectiveness of relief element favors neither party.

Seventh, the availability of the federal court in North Dakota cannot reasonably be challenged. This weighs in MW's favor.

With only one of these seven factors weighing in favor of MW, the Court does not find jurisdiction over MW unreasonable. The Court finds that it has personal jurisdiction over MW and denies the motion to dismiss for lack of personal jurisdiction.

C.  Venue

Hartford bears the burden of demonstrating that venue is proper in this District. Venue is proper under 28 U.S.C. § 1391(a)(2) when "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district. Despite MW's contentions to the contrary, the record indicates that a substantial portion of the events giving rise to Hartford's claims occurred in Washington. Although MW is located in North Dakota, the work that Hartford was contracted to perform and for which it seeks damages was undertaken largely in Washington. Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in this District.

D.  Transfer Pursuant to 28 U.S.C. § 1404(a)

MW has requested, in the alternative, that the Court transfer this action to the district court in North Dakota pursuant to 28 U.S.C. § 1404(a).

Under § 1404(a), the Court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted). The defendant has the burden to prove that transfer is required. Jones v. GNC Franchising, Inc., 211 F.3d 495, 499 n.22 (9th Cir. 2000). On a motion to transfer, the Court may consider these eight factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Id. at 498-99.

MW has provides only three bases for transfer: (1) there are "likely" more witnesses in North Dakota than in Washington; (2) Hartford has travelled more to North Dakota than MW

ORDER ON MOTION TO DISMISS- 7

has travelled to Washington; and (3) the physical equipment for which Hartford performed mechanical engineering services in located in North Dakota. (Dkt. No. 6 at 12) None of these factors persuades the Court to transfer this action. The thrust of Hartford's complaint is that it was unpaid for engineering services performed in Washington, rendering the location of the physical equipment largely irrelevant to the litigation. Hartford has also identified that a large number of witnesses reside in Washington. Nothing about the past travel patterns of the parties persuades the Court to transfer this action. MW has failed to satisfy its burden, and the Court denies its request for transfer.

## Conclusion

Hartford has carried its burden and demonstrated that the Court has specific jurisdiction over MW and that venue is proper in this District. MW has failed to meet its burden to obtain dismissal or transfer of this action. The Court DENIES MW's Motion to Dismiss or Transfer.

The Clerk is directed to send a copy of this order to all counsel of record.

DATED this 25th day of September, 2009.

Marsha J. Pechman
United States District Judge

ORDER ON MOTION TO DISMISS- 8